IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00027-PAB-CBS

JENNIFER D. HARRIS,
    Plaintiff,
v.

RAMONA AVANT, Captain;
TODD COWENS, Lieutenant;
and  TONYA GAMBLIN, Sergeant,
    Defendants.

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Magistrate Judge Craig B. Shaffer

THIS MATTER comes before the court on Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (filed March 23, 2011) (doc. #44).  Pursuant to the memorandum dated March 28, 2011 (doc. #45) this matter was referred to the Magistrate Judge.  Plaintiff's Response was filed on June 21, 2011 (doc. #60).  On July 5, 2011, Defendants filed their Reply (doc. #62).  Having carefully considered the arguments presented in the parties' briefs, as well as applicable case law, the court recommends that Defendants' Motion to Dismiss be granted.

**Factual Background**

Jennifer D. Harris ("Ms. Harris") is currently incarcerated in the Denver Women's Correctional Facility ("DWCF") and is a *pro se* Plaintiff.  *See* Second and Final Amended Complaint ("AC") (doc. #28), at 3.  Plaintiff brings this case pursuant to 42 U.S.C. § 1983 against Defendants Ramona Avant, Todd Cowens, and Tonya Gamblin.

Ms. Harris raises claims for violations of her rights under the First Amendment; the Religious Land Use and Institutionalized Persons Act ("RLUIPA"); the Fourteenth Amendment, and for alleged retaliatory conduct.  Claim One asserts a violation of Plaintiff's First Amendment free exercise rights.

1

Ms. Harris specifically alleges that on May 28, 2009, Defendant Gamblin, with permission from Defendant Cowens, "ordered [her] to throw her Kosher Meal away" although she "received permission from kitchen Staff Sergeant Mendoza" to eat inside her room. *Id.* at 4. Plaintiff also alleges that Defendants Gamblin and Avant ordered her to move to another room on August 29, 2009, which forced her to violate the Sabbath. *Id.* Claim Two is against Defendant Gamblin for violating Ms. Harris's right under RLUIPA by forcing her to sign her name for a new room key and fill out a Cell Inspection Acceptance Form. Plaintiff states that "it is against her religion to sign her name on the Sabbath Day." *Id.* at 5. In Claim Three Ms. Harris alleges violation of her Due Process rights by Defendants Avant and Gamblin when they authorized the August 29, 2009 move without following DWCF proper housing procedure. *Id.* at 6. In Claim Four Ms. Harris alleges that she has been subjected to a pattern of retaliatory treatment and harassment for serving a Motion for Production of Documents on Warden Travis Trani ("Mr. Trani") and Defendants Avant and Gamblin. *Id.* at 11.

**Analysis**

Defendants move to dismiss Plaintiff's Second and Final Amended Complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test 'the sufficiency of the allegations within the four corners of the complaint after taking those allegations to be true.'" *Vigil v. Jones*, 2011 WL 1480679, at *4 (D. Colo. Mar. 15, 2011) (quoting *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994)).[1] However, to withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). A complaint must set forth sufficient facts to elevate a claim above the level

---

[1] Copies of unpublished decisions cited are attached to this Recommendation.

2

of mere speculation. *Robbins*, 519 F.3d at 1247.  While *pro se* pleadings should be "construed liberally and held to a less stringent standard than formal proceedings drafted by lawyers," *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted), that standard does not override a *pro se* plaintiff's responsibility to provide a simple and concise statement of her claims and the specific conduct that gives rise to each asserted claim.  See *Willis v. MCI Telecomms.*, 3 F. Supp. 2d 673, 675 (E.D.N.C. 1998).  This court cannot be a *pro se* litigant's advocate.  *Bellmon*, 935 F.2d at 1110.  Just as importantly, the court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not asserted.  *Associated General Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

For her first claim, Ms. Harris alleges that her First Amendment rights were violated on May 28, 2009, when she was ordered to throw away her Kosher meal and on August 29, 2009, when she was ordered to move, which caused her to work or bring burden on the Sabbath.  Defendants argue that these are isolated incidents, rather than a continued situation, and, therefore, do not constitute a substantial burden sufficient to raise a First Amendment claim.  The court agrees.

"To state a violation of a right to free-exercise of religion under the First Amendment, [plaintiff] must show that [she] was denied reasonable opportunities to exercise [her] sincerely held religious belief. . . . and that [the] prison regulation [constituted] a substantial[ ] burden[ ]."  *Kailey v. Zavaras*, 2011 WL 5593671, at *7 (D. Colo. Nov. 17, 2011) (quotations and citations omitted).   The Defendants do not challenge the sincerity of Plaintiff's beliefs.  Thus, the court must determine whether the burden on Ms. Harris's religious exercise was substantial.

"Restrictions or regulations that impose mere inconveniences or have an incidental effect upon an individual's religious exercise will not be deemed substantial."  *Ind v. Colo. Dep't of Corr.*, 2011 WL 7063298, at *25 (D. Colo. Apr. 7, 2011) (quoting *Hammons v. Jones*, 2006 WL 353448, at *4 (N.D. Okla. Feb. 14, 2006)).  "[S]cattered and minor complaints about kosher meals were insufficient as a

matter of law to show that defendants imposed a substantial burden on [Plaintiff's] religious exercise." *Strope v. Cummings*, 381 F. App'x 878, 881 (10th Cir. 2010); *see also Smith v. Graziano*, 2010 WL 1330019, at *9 (N.D.N.Y. Mar. 16, 2010) (cancellation of two religious services is *de minimis* and does not impose a substantial burden of an inmate's free exercise rights under the First Amendment); *White v. Glanz*, 1993 WL 53098, at *2 (10th Cir. Feb. 23, 1993) (Muslim inmate that was given two meal trays containing bacon did not have a claim under the First Amendment).

Ms. Harris does not claim that she is not being given Kosher meals, or that she is required to eat non-Kosher food. Defendants ordering Plaintiff to discard one Kosher meal did not impose a substantial burden on her free exercise rights. To the extent Plaintiff raises new allegations regarding the quality of the Kosher food in her Response, it is improper for the court to consider them here. First, in a Rule 12(b)(6) motion to dismiss the court is precluded from considering matters outside the complaint. *Preston v. Atmel Corp.*, 560 F. Supp. 2d 1035, 1038 (D. Colo. 2008) (citing *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)). "Factual allegations contained in legal briefs or memoranda are [ ] treated as matters outside the pleadings for purposes of Rule 12(b)." *Fonte v. Bd. of Managers of Cont'l Towers Cond*o., 848 F.2d 24, 25 (2d Cir. 1988) (citing *United Steelworks of Am., AFL-CIO v. Am. Int'l Aluminum Corp.*, 334 F.2d 147, 149 (5th Cir. 1964)). Second, as Plaintiff's states, "[she] is [still] in the grievance process on some of the kosher meal violations," and therefore has failed to exhaust administrative remedies as to these alleged violations. *See* Response (doc. #60), at 11. Plaintiff is "required to exhaust administrative remedies pursuant to the PLRA" prior to filing a civil action. *Thomas v. U.S Bureau of Prisons*, 2007 WL 1341343, at *4 (D. Colo. May 4, 2007) (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)).

Ms. Harris's second claim is that Defendant Gamblin forced her to sign her name to receive a new room key and fill out a cell inspection acceptance form in violation of RLUIPA. Plaintiff alleges

"it is against her religion to sign her name on the Sabbath Day." *See* AC (doc. #28), at 5. RLUIPA provides that

> no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person [ ] is in furtherance of a compelling government interest; and is the least restrictive means of furthering that compelling governmental interest.

Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a) *et seq.* "To survive a motion to dismiss, a RLUIPA complaint must adequately allege the following: (1) that the plaintiff wishes to engage in a religious exercise; (2) that this wish is motivated by a sincerely held belief; and (3) that the exercise is subject to a substantial burden imposed by the government." *Vigil*, 2011 WL 1480679, at *9 (citing *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010)).

Defendants do not challenge whether Ms. Harris was engaged in a religious exercise or whether she was motivated by a sincerely held belief. Instead, Defendants argue that Plaintiff was not substantially burdened; therefore, the court will only discuss the third element. "[A] burden on religious exercise is substantial under RLUIPA if it denies a plaintiff reasonable opportunities to engage in such exercise." *Vigil*, 2011 WL 1480679, at *15-16 (internal quotation marks and citations omitted). *See also Allan v. Woods*, 2008 WL 724240, at *21 (N.D.N.Y. Mar. 17, 2008) ("[T]he fact that plaintiff had to work one half day on his Sabbath did not substantially burden the practice of his religion under RLUIPA."). Plaintiff has failed to adequately allege that being asked to move or being required to sign her name to receive a new room key constituted a substantial burden on her exercise of her religious belief.

Ms. Harris's third claim asserts that DWCF corrections officers violated her Due Process rights when they moved her in violation of DWCF's own procedures. "The Fourteenth Amendment prohibits any State from depriving a person of life, liberty, or property without due process of law." *Meachum v. Fano*, 427 U.S. 215, 223 (1976). Plaintiff's third claim fails for two reasons. First, violation of a prison

regulation is not cognizable under § 1983.  "Prison regulations are 'primarily designed to guide correctional officials in the administration of a prison. [They are] not designed to confer rights on inmates.'"  *Godlock v. Fatkin*, 84 F. App'x 24, 30 (10th Cir. 2003) (quoting *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995)).  "[A] failure to adhere to administrative regulations does not equate to a constitutional violation."  *Hostetler v. Green*, 323 F. App'x 653, 657-58 (10th Cir. 2009) (quoting *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993)) (internal quotations omitted).  *See also Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) ("To the extent [plaintiff] seeks relief for alleged violations of . . . prison regulations . . . he has stated no cognizable claim under § 1983.").

Second, "[a] due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (citation omitted).  To state a Due Process claim, Ms. Harris must allege: (1) the deprivation of a cognizable interest (in this case a liberty interest) protected by the Due Process Clause; and if so (2) that she was not afforded the appropriate level of process.  *Veile v. Martinson*, 258 F.3d 1180, 1184-85 (10th Cir. 2001) (citation omitted).  "The Due Process Clause itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.'"  *Toevs v.* Reid, 646 F.3d 752, 756 (10th Cir. 2011) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)".  "In the prison context, state regulations can create protected liberty interests, but such interests are 'generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Id.*  (quoting *Sandin*, 515 U.S. at 484).  Ms. Harris' allegation that she was moved to another cell on August 29, 2009 does not constitute atypical and significant restraint deserving due process protections.  *See, e.g., Lekas v. Briley*, 405 F.3d 602, 610–13 (7th Cir. 2005) (conditions of cell size, religious access/freedom, visiting procedures and telephone, opportunity for

6

exercise and out-of-cell activity, commissary restrictions, access to both general and legal libraries, access to radio and television, access to legal property, meal procedures, and showers and other hygiene needs did not impose an atypical and significant hardship); *Doyle v. Celia,* 2008 WL 4490111, at * 5 (D. Colo. Sept. 30, 2008) ("placement in a 'punishment cell' with other inmates that Plaintiff does not like also does not implicate a liberty interest"); *Thomas v. Gunja*, 110 F. App'x 74, 75-76 (10th Cir. Sept.14, 2004) (transfer to a restrictive unit of another prison did not create atypical circumstance for purpose of creating a liberty interest); *Weatherall v. Scherbarth*, 208 F.3d 228, 2000 WL 223576, at *1-2 (10th Cir. Feb.28, 2000) (finding no liberty interest in reclassification into administrative segregation).

As her fourth and final claim, Ms. Harris alleges she has been subjected to a pattern of retaliatory treatment and harassment because she served Mr. Trani and Defendants Avant and Gamblin with a Motion for Production of Documents on or about February 23, 2010. *See* AC (doc. #28), at 11. Plaintiff states that on March 2, 2010, Defendant Avant ordered that Ms. Harris be taken to administrative segregation for an assault allegation. *Id.* Plaintiff further alleges that on July 1, 2010, Defendant Gamblin told Plaintiff that she would be working on Saturday, which would violate her religious mandate not to work on the Sabbath. *Id.* She makes other allegations involving individuals who are not named Defendants.

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of [her]" constitutional rights. *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990), even where the action taken in retaliation would otherwise be permissible. *Id.* However, courts should not scrutinize and interfere with the daily operations of prisons. "[A]n inmate is not inoculated from the normal conditions of confinement . . . merely because [she] has engaged in protected activity." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). "[I]n order to establish a First Amendment retaliation claim, a prisoner must demonstrate that [s]he was (1) engaged in protected conduct; (2) that [s]he suffered an adverse action; and (3) that a causal connection exists between the protected conduct and the

7

adverse action." *Walker v. Spence*, 2009 WL 3074612, at *6 (D. Colo. 2009) (citation and quotations omitted). A plaintiff must show that "but for" the retaliatory motive the incidents would not have occurred. *Peterson*, 149 F.3d at 1144. "An inmate claiming retaliation must 'allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional right.'" *Id.* (quoting *Frazier v. DuBois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990)) (emphasis in original).

Ms. Harris's claim for retaliation fails because she has not adequately alleged that the Defendants' alleged retaliatory motives were the "but for" cause of the Defendants' actions. Plaintiff admits that her placement in administrative segregation followed allegations of assault. As to Ms. Harris's allegation that Defendant Gamblin told her she would be working on her Sabbath, this incident occurred more than four months after Plaintiff served her motion. "[W]hile protected conduct closely followed by an adverse action may justify an inference of retaliatory motive . . . some five to six months after the alleged complaint is not suggestive of a retaliatory motive." *Herrera v. Fortunato*, 2011 WL 3608076, at *4 (D. Colo. Aug. 16, 2011). Furthermore, Ms. Harris makes no allegation that Defendant Gamblin was responsible for scheduling her to work, only that Defendant Gamblin informed Plaintiff that she would be working.

Defendants assert that they are entitled to qualified immunity from suit on Plaintiff's claims. Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights which a reasonable person in their position would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court evaluating a claim of qualified immunity "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999). Having concluded above that Ms. Harris has failed to state a valid § 1983 claim, "the inquiry ends and

the [Defendants are] entitled to qualified immunity." *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007) (citation omitted).

Accordingly, for the foregoing reasons, I recommend that Defendants' Motion to Dismiss (doc. #44) be GRANTED and this civil action be dismissed.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for de novo review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar de novo review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999). (District Court's decision to review a Magistrate Judge's recommendation de novo despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morals-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado this 16th day of February, 2012.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge